```
                IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                           AT BLUEFIELD
```

UNITED STATES OF AMERICA,

    Plaintiff,

v.                             CIVIL ACTION NO. 1:06-0532

TWO REAL PROPERTIES SITUATED
IN BLUEFIELD, MERCER COUNTY,
WEST VIRGINIA, TOGETHER WITH
ALL IMPROVEMENTS THEREON AND
APPURTENANCES THERETO,

    Defendants.


(Maurice Taft Gibson,
 Criminal No. 1:05-00126-01;

 Tonya S. Gibson,
 Criminal No. 1:05-00126-05)


<u>**MEMORANDUM OPINION AND ORDER**</u>

      Pending before the court is the United States' motion for summary judgment (doc. # 19).  For the reasons explained below, that motion is GRANTED.

## I.  <u>Background</u>

A.     <u>Criminal Case</u>

      Maurice Gibson, the leader of an extensive drug distribution operation, was named in eighteen counts of a twenty-count indictment[1] charging Gibson and others with various drug

---

[1] Gibson was not named in Counts Six and Seven.

distribution and money laundering offenses.[2]  Count One of the
Indictment charged Gibson and others with conspiring to
distribute quantities of cocaine and oxycodone, in violation of
21 U.S.C. § 846.  Counts Two, Three, Four, and Thirteen charged
Gibson with distributing oxycodone, on or about April 20, 2004,
April 26, 2004, May 10, 2004, and February 7, 2005, respectively.
Counts Eleven and Fourteen charged Gibson with distributing
cocaine, on or about October 27, 2004, and March 9, 2005,
respectively.  Count Twelve charged Gibson with distributing a
quantity of hydromorphone, also known as "Dilaudid," on or about
October 28, 2004.

Count Five charged that, on or about May 11, 2004,
Gibson, aided and abetted by Hector Reinat, knowingly and
intentionally distributed a quantity of cocaine.   Counts Eight
and Ten charged that, on or about June 10, 2004, and September
16, 2004, respectively, Gibson, aided and abetted by Christina
Louise Arnoto, knowingly and intentionally distributed a quantity
of oxycodone.   Count Nine charged that, on or about July 27,
2004, Gibson, aided and abetted by Robert L. Gravely, knowingly
and intentionally distributed a quantity of oxycodone.

Counts Eighteen, Nineteen, and Twenty all charged that
Gibson engaged in specific acts of money laundering or conspiracy

---

[2] Counts Fifteen, Sixteen, and Seventeen were dismissed upon
motion of the United States.

to commit money laundering.  His wife and co-defendant, Tonya
Gibson, was also charged in Count Eighteen (conspiracy to commit
money laundering) and Count Nineteen (money laundering).

After a three-day trial to a jury, Gibson was found
guilty on all counts.  By Order entered February 26, 2007, the
court granted Gibson's third motion for a new trial as to Counts
One, Eight, and Ten.  The court later dismissed those counts on
the government's motion.  Gibson was sentenced to 240 years
imprisonment, consisting of 20 years on each count of conviction
to run consecutively, three years of supervised release on each
count of conviction to run concurrently, and restitution in the
amount of $9,202.18.

Prior to trial, Tonya Gibson pled guilty to the money
laundering charge set forth in Count 19 of the indictment, that
is, concealing the source of drug proceeds used to purchase a
2003 Cadillac Escalade by making a materially false statement
about her true income on a credit application with GMAC.  On June
22, 2006, Tonya Gibson was sentenced to a term of imprisonment of
66 months and a three-year term of supervised release.

B.    Civil Forfeiture

On June 29, 2006, pursuant to 18 U.S.C. §§ 983 (a) and
985, the United States filed a Verified Complaint of Forfeiture
seeking to forfeit the defendant real properties, together with
all improvements thereon and appurtenances thereto, on the

grounds that the properties constituted proceeds of, or were used
to facilitate the commission of, violations of federal controlled
substance laws.  See 21 U.S.C. §§ 881(a)(6) and (7).  The United
States also alleged that the properties were forfeitable for
having been involved in violations of 18 U.S.C. §§ 1956 and 1957,
pursuant to 18 U.S.C. § 981(a)(1).[3]  The property listed in the
Verified Complaint for Forfeiture consists of two real
properties: (1) a residence known as 1008 Albemarle Street,
Bluefield, Mercer County, West Virginia; and (2) a residence
known as 2216 Toledo Street, Bluefield, Mercer County, West
Virginia.  Both properties are titled solely in the name of Tonya
Gibson.

     Maurice Gibson and Tonya Gibson were served with the
Verified Complaint of Forfeiture and the Notice of Complaint for
Forfeiture Against Real Property on June 30, 2006.  The Notice of
Complaint directed the Gibsons to file a Verified Statement of
Interest within 30 days of service and to file an answer to the
complaint within 20 days of filing their statements of interest.

     On July 17, 2006, Maurice Gibson filed an answer to the
Verified Complaint and a motion for appointment of counsel.  He
did not file a Verified Statement of Interest.  On July 24, 2006,

_____

     [3] According to 18 U.S.C. § 981(a)(1)(A), "[a]ny property,
real or personal, involved in a transaction or attempted
transaction in violation of section 1956, 1957, or 1960 of this
title, or any property traceable to such property . . . is
subject to forfeiture to the United States."

4

Tonya Gibson filed an answer to the Verified Complaint and a motion for appointment of counsel.  She also failed to file a Verified Statement of Interest.

In accordance with the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, the United States published a legal notice of the forfeiture in The Bluefield Daily Telegraph on July 14, 21, and 28, 2006.  No other claims have been filed for either of the properties pursuant to the legal advertisement.

By Order entered January 16, 2007, Magistrate Judge VanDervort granted the Gibsons' motions for appointment of counsel to promptly assess their clients' standing to contest forfeiture of the properties.  On February 28, 2007, Tonya Gibson, by appointed counsel, filed an answer with affirmative defenses.  No further documents have been filed on behalf of either Maurice Gibson or Tonya Gibson nor have they filed a Verified Statement of Interest.

On July 30, 2009, the United States filed a motion for summary judgment and for a final order of forfeiture.  Maurice Gibson did not file a response to the motion.  Tonya Gibson filed a motion for an extension of her deadline for responding to the summary judgment motion.  The court granted Tonya Gibson's motion, giving her until September 1, 2009, to respond to the government's motion.  Despite being granted an extension of time,

Tonya Gibson has not filed a response in opposition to the motion for summary judgment.

## II.  __Standard of Review__

Turning first to the issue of summary judgment, Rule 56 of the Federal Rules of Civil Procedure provides that

> [t]he judgment sought shall be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).  The moving party has the burden of establishing that there is no genuine issue as to any material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). As the United States Supreme Court of Appeals stated in Celotex, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

Once the moving party has met its burden, the burden then shifts to the nonmoving party to produce sufficient evidence for a jury to return a verdict for that party.

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.  The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find, by

        a preponderance of the evidence, that the plaintiff is
        entitled to a verdict . . . .

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  "If

the evidence is merely colorable, or is not significantly

probative, summary judgment may be granted."  Id. at 250-51.

Significantly, "a party opposing a properly supported motion for

summary judgment may not rest upon mere allegation or denials of

his pleading, but must set forth specific facts showing that

there is a genuine issue for trial."  Id. at 256.  Finally, "[o]n

summary judgment the inferences to be drawn from the underlying

facts . . . must be viewed in the light most favorable to the

party opposing the motion."  United States v. Diebold, Inc., 369

U.S. 654, 655 (1962).

        Summary judgment may be granted in civil forfeitures

where this standard is met.  See, e.g., United States v. One 1987

Mercedes Benz 300E, 820 F. Supp. 248, 253 (E.D. Va. 1993)

(granting summary judgment in favor of government where there was

no material issue of fact).  Furthermore, summary judgment may be

granted where a claimant has asserted an innocent owner defense.

See, e.g., United States v. One Parcel of Property Located at 755

Forest Road, 985 F.2d 70, 73 (2d Cir. 1993) (rejecting innocent

owner defense and affirming summary judgment granted against wife

of target of narcotics investigation where narcotics and drug

paraphernalia had been found in their shared bedroom).

### III.  Analysis

Pursuant to the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), the United States bears the initial burden of establishing, by a preponderance of the evidence, that the defendant properties are forfeitable.  18 U.S.C. § 983(c)(1); United States v. Mondragon, 313 F.3d 862, 865 (4th Cir. 2002). "Under the preponderance of the evidence standard, the Government must show that the relevant facts are more likely true than not." U.S. v. $864,400.00 in U.S. Currency, 2009 WL 217249, *2 (M.D.N.C. July 20, 2009) (citing United States v. Kiulin, 360 F.3d 456, 461 (4th Cir. 2004)).

In determining whether property is subject to forfeiture, the government may rely on evidence gathered after the complaint is filed.  18 U.S.C. § 983(c)(2) ("[T]he government may use evidence gathered after the filing of a complaint for forfeiture to establish, by a preponderance of the evidence, that the property is subjected to forfeiture.").  "Moreover, where the Government contends that property was used to commit or facilitate the commission of a criminal offense, such as illicit drug trafficking, the Government must establish, by a preponderance of the evidence, that a `substantial connection' exists between the property to be forfeited and the criminal activity prohibited by statute." United States v. $147,900.00 in U.S. Currency, 2009 WL 903356, *7 (M.D.N.C. 2009)(quoting 18

8

U.S.C. § 983(c)(3)).  "[F]actors that weigh in favor of property being either a direct product of illicit drug activity or traceable to the activity as proceeds include `where a defendant's verifiable income cannot possibly account for the level of wealth displayed and where there is strong evidence that the defendant is a drug trafficker.'" Id. (quoting United States v. Thomas, 913 F.2d 1111, 1114 (4th Cir. 1990)).

The Gibsons' convictions for drug trafficking and/or money laundering offenses from about October 2003 through May 19, 2005, collaterally estop them from denying that they were involved in those activities during that time period.  See United States v. $31,697.59 Cash, 665 F.2d 903, 905-06 (9th Cir. 1982); Rimmer v. Fayetteville Police Dept., 567 F.2d 273, 276 (4th Cir. 1977); Moore v. United States, 360 F.2d 353, 355 (4th Cir. 1965), cert. denied, 385 U.S. 1001 (1967).

A.   Trial Testimony of IRS Special Agent Stephen Dempsey

At the criminal trial of Maurice Gibson, IRS Special Agent Stephen Dempsey testified regarding the financial investigation and analysis he conducted involving the income and expenditures of Maurice and Tonya Gibson from 1999 through June 2005.  See Trial Testimony of Agent Stephen Dempsey, March 10, 2006, Tr. at 43-99.  As part of his analysis, Agent Dempsey reviewed the federal income tax returns filed by the Gibsons. Tr. at 45.  Agent Dempsey testified the Gibsons reported the

9

following amounts of adjusted gross income on their federal tax
returns and received the following refunds and earned income
credits for the operative period:

| Tax Year | Maurice | Tonya | Refund/EIC |
|----------|---------|-------|------------|
| 1999 | Did not file | $10,843 | $4,180 |
| 2000 | Did not file | $12,748 | $3,816 |
| 2001 | Did not file | $13,421 | $4,599 |
| 2002 | Did not file | $14,814 | $5,155 |
| 2003 | Did not file | $10,453 | $5,036 |
| 2004 | $ -1.00 income | $8,905 | $3,607 |
| 2005 | n/a | n/a | $3,699 |

Tr. at 45-49.

    Agent Dempsey also testified regarding additional sources
of funds that the Gibsons acquired during that same time period:
(1) $48,000 in insurance proceeds from dwelling/casualty loss;
(2) $80,000 in proceeds from the sale of five real properties
which were acquired and then sold in the name of Tonya Gibson;
(3) $43,399.67 in income from investment in gold bullion; and (4)
loan proceeds in the amount $57,600.  Tr. at 50-56.  According to
Agent Dempsey, the total source of legitimate funds between 1999
and 2005 was $329,914.67.  Tr. at 76, 80; Exhibit E-2 to
Government's Motion for Summary Judgment.

    Agent Dempsey also testified regarding the Gibsons'
expenditures during the same time period and stated that their

10

expenditures were $498,471.07.  Tr. at 76-77, 80; Exhibit E-2 to Government's Motion for Summary Judgment.  Such expenditures included:

> (1) $30,993.36 for the purchase of real property;
>
> (2) $82,103.47 for the purchase of the Gibsons' residence at 1008 Albemarle Street.  According to the deed, the purchase price of the property was $74,500 in 2001 and the actual loan payoff in early 2004 was $82,103.47.  Numerous $1,000 cash payments on the house came from Paul Arnoto who wrote checks to "cash" with a notation in the memo line that it was for "advertising expense."  Tonya Gibson had endorsed the checks.  A total of approximately $62,000 in cash payments, including the Arnoto checks, were made on the Albemarle mortgage between 2001 and early 2004 when it was paid off;
>
> (3) an investment of $87,388 in gold bullion;
>
> (4) $47.883.98 for a 2002 Cadillac Escalade of which $18,670 was paid in cash;
>
> (5) $20,920.94 for a 2003 Cadillac Escalade of which $8,000 was paid in cash and monthly payments on the remaining balance were $717.83.  Tonya Gibson applied for financing for this vehicle and

stated her income was $84,000 per year, far in

excess of what she reported to the IRS for that

same year;

(6) $3,180 for a 2001 Kawasaki motorcycle;

(7) $6,900.51 for a 2002 Yamaha 4-wheeler;

(8) $19,000 for a 2002 Pontoon boat, of which

$3,900 was paid in cash;

(9) $30,017.88 for an airplane, consisting of the

$26,000 purchase price and an amount paid in cash

for repairs to the plane;

(10) $60,758 for jewelry, including a $33,000

Rolex watch;

(11) $15,067.90 in miscellaneous cash purchases;

and

(12) $109,357.03 in payments on six credit card

accounts.

Tr. at 57-73; Exhibit E-2 to Government's Motion for Summary

Judgment.

Based on the foregoing, Agent Dempsey testified that the

Gibsons' expenditures exceeded their legitimate sources of income

by $168,556.40.  Tr. at 80; Exhibit E-2 to Government's Motion

for Summary Judgment.

B.      The Albemarle Property was Purchased Primarily with
        Illegal Drug Proceeds and, therefore, is Forfeitable

    According to 21 U.S.C. § 881(a)(6), "[a]ll moneys,
negotiable instruments, securities, or other things of value
furnished or intended to be furnished by any person in exchange
for a controlled substance or listed chemical in violation of
this subchapter, all proceeds traceable to such an exchange, and
all moneys, negotiable instruments, and securities used or
intended to be used to facilitate any violation of this
subchapter . . . shall be subject to forfeiture to the United
States and no property right shall exist in them."

    As noted above, Agent Dempsey testified regarding
numerous cancelled checks that Paul Arnoto had written to "cash"
that were used to pay the mortgage on the Albemarle property.
Tr. at 59-61.  Tonya Gibson's signature was written on the backs
of the checks as the endorser.  Tr. at 61.  According to Agent
Dempsey, the Gibsons paid off an approximate $82,000 mortgage
within three years of purchasing the property.  Tr. at 59-61.
Agent Dempsey's analysis of the Gibsons' legitimate sources of
income for that three-year period established that they did not
have sufficient income from legitimate sources to pay off the
Albemarle mortgage in three years.  Furthermore, there was ample
evidence at trial of Gibson's involvement in narcotics
trafficking during the same time period.  Based on the foregoing,
the United States has shown by a preponderance of the evidence

13

that the a substantial connection exists between the Albemarle property and the Gibsons' criminal activity and that the property constitutes proceeds of drug trafficking.

C.    Affidavit of William T. "Ted" Jones

Bluefield City Police Detective Ted Jones was an investigator with the Southern Regional Violent Crime and Drug Task Force.  Jones Affidavit ¶ 2(attached as Exhibit F to Government's Motion for Summary Judgment).  Jones was involved in the investigation of illegal drug trafficking and money laundering offenses committed by Maurice Gibson and others beginning in 2001, and continuing through indictment and sentencing.  Jones Aff. ¶ 3.  Through his investigation, Jones became familiar with key Gibson associates, including Hector Reinat, Tina Arnoto, Dowan Clayton, and Edward Hooks.  See id.

During the course of his investigation, Detective Jones was personally involved in conducting surveillance of Gibson's activities through actual observation and the use of a pole camera that was installed adjacent to the property deeded to Tonya Gibson at 2216 Toledo Street.  Jones Aff. ¶ 4.  Around April 2004, Hector Reinat,[4] a known drug dealer and associate of Gibson, resided at 2216 Toledo Street.  Reinat was observed driving a vehicle registered to "Jedha or Alicia Brown, 2216

_____

[4] Reinat was one of the Gibson's co-defendants in the criminal proceeding.

14

Toledo Street." Id.  A phone number used by Maurice Gibson to facilitate drug deals was registered to Amie E. Kisker at 2216 Toledo Street.  Id.

Detective Jones observed Gibson and his associates at the Toledo Street property on numerous occasions and, more specifically, before and after their participation in various drug deals with a confidential informant.  Id.  On more than one occasion, Gibson was observed leaving the Toledo Street residence before a drug deal and returning to the residence after the deal had been completed.  Id.

On May 19, 2005, the date of the murder of the aforementioned confidential informant, Gibson, Edward Hooks, and Devin Clements were observed at the Toledo Street residence.  Id. After the murder, Clements returned to the house on Toledo Street and ran from Detective Jones when he was approached.  Id.

D.     The Toledo Street Property was Substantially Connected to
       Drug Trafficking and, therefore, is Forfeitable

According to 21 U.S.C. § 881(a)(7), "[a]ll real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment . . . shall be subject to forfeiture to the United States and no property right shall exist in them."

15

As noted above, under CAFRA, the forfeiture of facilitating property requires a "substantial connection" between the offense and the property. 18 U.S.C. § 983(c)(3).  "The hurdle posed by the `substantial connection' requirement is not . . . a particularly high one." United States v. Borromeo, 995 F.2d 23, 26 (4th Cir. 1993).

The United States has shown by a preponderance of the evidence that the Toledo Street property is subject to forfeiture and that there was a substantial connection between the property and drug trafficking.  The affidavit of Detective Jones establishes that the Toledo Street property was used by Gibson associates as a place to live, that Gibson met with his associates at the property both before and after drug deals, and that a cell phone used by Gibson to facilitate his illegal activity was billed to the property.  On many of the controlled buys involving Gibson and his associates and the informant, Gibson or his associates are seen leaving the Toledo Street property prior to the drug deal.  Likewise, after the deal was completed, the individuals would return to Toledo Street.

E.   Innocent Owner defense

The United States having met its burden of showing the defendant properties are subject to forfeiture, it then falls to Maurice Gibson or Tonya Gibson to show that he or she is entitled to the defendant properties.  Under CAFRA, a claimant may defeat

16

a forfeiture by showing that he or she is an "innocent owner."
18 U.S.C. § 983(d)(1) sets forth the requirements to assert an
innocent owner defense.  To do so, the claimant must show by a
preponderance of the evidence that he or she (1) had no knowledge
of the conduct giving rise to the forfeiture; or (2) upon
learning of the conduct giving rise to the forfeiture, did all
that reasonably could be expected under the circumstances to
terminate such use of the property.  18 U.S.C. § 983(d)(2)(A).

     1.   *Maurice Gibson*

     The United States contends that Maurice Gibson lacks both
Article III and statutory standing to challenge the forfeiture
and, therefore, his responsive pleading should be stricken and
summary judgment be granted against Gibson and in favor of the
United States.  "In forfeiture, as elsewhere, [the court] must
distinguish between standing conferred by statute and the
standing requirements of Article III to the Constitution."
United States v. Contents of Accounts Nos. 3034504504 and 144-
07143 at Merrill Lynch, Pierce, Fenner and Smith, Inc., 971 F.2d
974, 984 (3d Cir. 1992).  To have Article III standing, Maurice
Gibson must show that he has "a colorable ownership, possessory
or security interest in at least a portion of the defendant
property."  United States v. $515,060.42 in United States
Currency, 152 F.3d 491, 497 (6th Cir. 1998).  18 U.S.C. §
983(d)(6)(A) defines "owner" as "a person with an ownership

interest in the specific property sought to be forfeited, including a leasehold, lien, mortgage, recorded security interest, or valid assignment of an ownership interest."

On July 17, 2006, Maurice Gibson filed a document in this case wherein he stated:

> 2.  I hereby let you know that I contest any forfeiture of any property that I have an interest in.
>
> 3.  I hereby state that I have in interst [sic] in the property listed in the complaint, because I either own it outright by deed or have an interest in the property because I am married to the owner (Tonya Gibson).

As noted earlier, the defendant properties are titled solely in the name of Tonya Gibson.  In West Virginia, ownership of real property is dictated by the deed.  See W. Va. Code § 36-6-1 ("No estate . . . in lands . . . shall be created . . . unless by deed or will.").  Maurice Gibson is not listed on the deeds for either of these properties and never has been.  Accordingly, he is not the owner of the properties.

Furthermore, Maurice Gibson is not an owner of the properties solely because he is married to the properties' owner, Tonya Gibson.  Under West Virginia law, married persons can own real property acquired during the marriage solely in their own

18

name and can transfer such real property without the necessity of
the other spouse's approval because the non-owner spouse does not
have a present, vested interest in the real estate that is titled
solely in the name of the other spouse.  W. Va. Code § 43-1-2.[5]
An unvested marital estate is insufficient to confer Article III
and statutory jurisdiction.  See United States v. Schifferli, 895
F.2d 987, 989, n.1 (4th Cir. 1990) (wife whose name was not on
deed lacked standing even though she would obtain ownership
interest in the event of termination of the marriage); see also
United States v. Cochenour, 441 F.3d 599, 601 (8th Cir. 2006)
(Missouri statute regarding tenants by the entirety ownership of
marital property had limited applicability to dissolution of
marriage, and thus did not provide wife with ownership interest

---

[5] Pursuant to W. Va. Code § 43-1-2(b), "[a]ny married person
who conveys an interest in real estate shall notify his or her
spouse prior to or within thirty days of the time of the
conveyance if the conveyance involves an interest in real estate
to which dower would have attached if the conveyance had been
made prior to the date of enactment of this statute."  The
statute goes on to state that "[w]hen a married person fails to
comply with the notification requirements of this section, then
in the event of a subsequent divorce within five years of said
conveyance, the value of the real estate conveyed, as determined
at the time of the conveyance, shall be deemed a part of the
conveyancer's marital property for purposes of determining
equitable distribution or awards of support, notwithstanding that
any consideration for said interest in the real estate may
already be included in the marital property."  W. Va. Code § 43-
1-2(d).
     Unlike dower, which gave the non-owner spouse a vested,
inchoate right in the real estate owned by the other spouse, see
Meadows v. Belknap, 199 W. Va. 243, 247, n. 8 (1997), the notice
of conveyance provision merely does not create a lien or claim by
the non-owner spouse in the real estate.

in property owned solely by husband which was subject of drug
forfeiture order); <u>United States v. 9844 S. Titan Court</u>, 75 F.3d
1470, 1478-79 (10th Cir. 1996) (rejecting argument under Colorado
law that spouse had current legal or equitable interest in
marital property titled in other spouse's name); <u>United States v.
Premises Known as 717 S. Woodward Street, Allentown,
Pennsylvania</u>, 2 F.3d 529, 535-36 (3rd Cir. 1993) (claimant whose
husband acquired property at issue during marriage was not
"owner" of property under Pennsylvania law and did not have
standing to assert innocent owner defense in federal forfeiture
action as marital property provision of Pennsylvania divorce
statute did not confer ownership interest outside context of
equitable distrubtion).[6]  Based on the foregoing, Maurice Gibson
does not possess Article III standing to contest the forfeiture.

 Maurice Gibson also lacks statutory standing herein.
Rule C(6)(a)(I), Supplemental Rules for Certain Admiralty and
Maritime Claims, requires that a person who asserts an interest

---

 [6] Similarly, pursuant to West Virginia Code § 48-7-108,
"[a]s to any third party, the doctrine of equitable distribution
of marital property and the provisions of this article shall be
construed as creating no interest or title in property until and
unless an order is entered under this article judicially defining
such interest or approving a separation agreement which defines
such interest.  Neither this article nor the doctrine of
equitable distribution of marital property shall be construed to
create community property nor any other interest in estate in
property except those previously recognized in this state.  A
husband or wife may alienate property at any time prior to the
entry of an order under the provisions of this article . . . . "

or right against property involved in a forfeiture must "file a verified statement identifying the interest or right" within 30 days after service of the complaint.  Maurice Gibson has never filed a verified statement of interest herein and, therefore, it is wholly appropriate for this court to strike his claim for lack of standing.  See United States v. $12,126.00 in United States Currency, 2009 WL 2156960, *2 (11th Cir. 2009) (district court entitled to insist upon strict compliance with the Supplemental Rules and strike claim for lack of standing where procedural requirements were not heeded).

Finally, even if Maurice Gibson possessed statutory and Article III standing to contest the forfeiture, he has not satisfied his burden of showing he is an innocent owner by a preponderance of the evidence.  18 U.S.C. § 983(d)(1).

2.   *Tonya Gibson*

Tonya Gibson's innocent owner defense must likewise fail. As noted above, to satisfy her burden of showing that she is an innocent owner, Tonya Gibson must show by a preponderance of the evidence that she (1) had no knowledge of the conduct giving rise to the forfeiture; or (2) upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property. 18 U.S.C. § 983(d)(2)(A).  Given her conviction in the underlying criminal proceeding as well as the lack of evidence offered on

her behalf herein, she cannot establish that she is an innocent owner and defeat the forfeiture.

### IV.  Conclusion

Because no material facts remain in dispute, this matter is ripe for summary disposition.  The undisputed facts of record make clear the defendant properties are properly forfeited under 21 U.S.C. § 881 and, therefore, the government is entitled to summary judgment.  Counsel for the government is directed to submit an appropriate judgment order to the court.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record.

IT IS SO ORDERED this 29th day of September, 2009.

ENTER:

David A. Faber
Senior United States District Judge